UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ELVERT S. BRISCOE, | ) | CASE NO. 1:06 CV 2744 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| TONNESHA S. JACKSON, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On November 14, 2006, pro se plaintiff Elvert S. Briscoe filed this action under 42 U.S.C. §§ 1981, 1983, and 1985 against his former girlfriend Tonnesha S. Jackson, the Cuyahoga County Child Support Enforcement Agency ("CSEA"), Associate Director of Orchid Genescreen Dr. Joy Johnson, and Ms. Jackson's stepfather Renaldo Terry. In the complaint, plaintiff alleges that the defendants have prevented him from establishing his paternity of Ms. Jackson's child. He seeks declaratory and monetary relief.

**Background**

Mr. Briscoe alleges that he and Ms. Jackson met in 1995 and became intimate. In November 1995, Ms. Jackson told Mr. Briscoe that she was pregnant. He contends she told him and members of their respective families that Mr. Briscoe was the father of her child. Ms. Jackson

gave birth to a baby girl on June 18, 1996.

At some point, Mr. Briscoe's relationship with Ms. Jackson soured. Mr. Briscoe contends that Ms. Jackson was residing with Mr. Terry in his home. He states that Mr. Terry blocked his telephone calls to the home and refused his requests to visit Ms. Jackson and the baby, threatening to telephone the police if he attempted to do so. He claims he was prevented from establishing a parental relationship with the minor child.

In June 1998, Mr. Briscoe was arrested and charged with rape in an unrelated matter. He was convicted in 1999 and was sentenced to two concurrent life terms of imprisonment and was adjudicated a sexual predator. See State of Ohio v. Brisco, No. 76125, 2000 WL 1222006 (Ohio App. 8 Dist. Aug. 24, 2000). He was incarcerated in the Grafton Correctional Institution where he continues to be housed.

Undeterred by his incarceration, Mr. Briscoe sought the assistance of CSEA to establish a parent-child relationship with Ms. Jackson's child pursuant to Ohio Revised Code §3111.46 in October 2004. CSEA ordered both parties to submit to genetic testing with Orchid Genescreen. On November 23, 2004 Dr. Joy Johnson certified the results of the genetic testing which indicated that Mr. Briscoe could not be the biological father of Ms. Jackson's minor child.

Mr. Briscoe filed objections to the CSEA administrative order denying paternity in the Cuyahoga County Juvenile Court on December 20, 2004. He asked the court to order genetic blood tests because he felt that his first test sample obtained from buccal cells was rendered defective by his use of tobacco, hydrogen peroxide toothpaste and his consumption of food bacteria. A hearing was conducted before a Magistrate on April 28, 2005 and his Motion was denied. Mr. Briscoe could not attend the hearing due to his incarceration, but Ms. Jackson was present and

testified that she agreed with the results of the genetic testing. She also indicates that Mr. Briscoe was harassing her and her family. A no contact order was added to the magistrate report and recommendation. Mr. Briscoe filed objections to the magistrate's decision April 28, 2005 and asked the court to appoint counsel for the minor child. The trial court overruled his objections and denied his motion on May 5, 2005.

On May 16, 2005, Mr. Briscoe appealed the decision to the Ohio Eighth District Court of Appeals. He raised six assignments of error. In his first assignment of error, he claimed that the minor child should have been made a party to the case. His second and third assignments of error argued that the court violated his constitutional rights by not permitting a second paternity test. His fourth assignment of error asserted that he should have been permitted to be present for the hearing. His fifth assignment of error argued that the court's failure to secure his attendance at this hearing denied him rights protected by the confrontation clause. His sixth assignment of error simply asserted that Ohio's paternity statutes should be read to achieve the legislative intent. The decision of the juvenile court was affirmed. Mr. Briscoe appealed that decision to the Ohio Supreme Court which declined jurisdiction on June 21, 2006.

In his pleading before this court, Mr. Briscoe challenges these court decisions. He contends he has a liberty interest in the establishment of paternity and he should have been given a "pre-termination hearing" before he was denied parental rights. (Compl. at 6.) He also claims the "post-termination process" was inadequate and did not correct the flawed decision of the juvenile court. He asserts that Ohio Revised Code § 3111.07 (A) is unconstitutional because Ms. Jackson's child has "a liberty interest in the establishment of a parent-child relationship and accuracy of such determination that can not be arbitrarily abrogated." (Compl. at 9.) Similarly, he

3

claims that Ohio Revised Code § 3111.09 is unconstitutional because it required him to pay for any additional paternity testing he desired. He claims he is unable to afford this testing. He indicates that Ms. Jackson and Mr. Terry conspired to violate his civil rights by stating that they agreed with the results of the paternity tests and requesting a protective order. He contends that the juvenile court denied him equal protection of the law when it asked Ms. Jackson if she agreed with the results. He feels this is a gender based distinction. Finally, he claims that the court erred by not permitting him to seek additional evidence to establish paternity based upon the likely success of his pursuit. He requests that this court declare the state court judgments to be flawed, order the establishment of paternity, visitation and genetic testing at the state's expense, and award him compensatory and punitive damages.

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

dismissed pursuant to section 1915(e).

As a threshold matter, United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or

unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937. The doctrine requires dismissal of a claim when a plaintiff complains of injury from the state court judgment itself.

In the present action, Mr. Briscoe's claims all directly attack the state court's decision to deny paternity. All of the allegations in these causes of action concern specific grievances that the law was incorrectly applied to plaintiff's case, and are clearly predicated on his belief that the state courts were mistaken in rendering their decisions against him. Even his causes of action which are stated in terms of a constitutional challenge to Ohio's paternity statutes are really challenges to the state court's decision. Moreover, Mr. Briscoe requests as relief that the state judgment be set aside and its execution enjoined. Any review of the constitutional claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against him. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

To the extent that Mr. Briscoe merely seeks to re-litigate the issue of paternity in this court, he is unable to do so. First, federal courts have no jurisdiction over actions which in essence are domestic relations disputes. McLaughlin, 193 F.3d at 412; Firestone v. Cleveland Trust, 654 F.2d 1212, 1215 (6th Cir. 1981). Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court. Firestone, 654 F.2d at 1215. These cases involve local problems which are "peculiarly suited to state regulation and control and peculiarly unsuited to control by federal courts." Id. For this reason, it is incumbent upon the district court to examine the claims of the complaint and to

6

determine the true character of the dispute to be adjudicated. Id. Although plaintiff characterizes this as a federal civil rights action, it is clear from the complaint and the relief requested that he is asking this court to intervene in the paternity action, reverse decisions of the state court magistrate and judges, make an independent determination of paternity, and punish the defendants for opposing his efforts. This court lacks jurisdiction to grant this type of relief.

Furthermore, a federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; Dubuc v. Green Oak Township, 312 F.3d 736, 744 (6th Cir. 2002). Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit. National Amusement, Inc. v. Springdale, 53 Ohio St. 3d 60, 62 (1990). The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action he files, or forever be barred from asserting it. Id. The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. Allen v. McCurry, 449 U.S. 90, 94 (1980). The Ohio courts have already determined that Mr. Briscoe is not the father of the minor child born to Ms. Jackson. Any attempt to litigate that question in federal court would be barred by the doctrine of res judicata. This court is bound to give full faith and credit to the decisions of the Ohio courts.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken

in good faith.[2]

        IT IS SO ORDERED.

        S/Peter C. Economus - 2/7/07
        PETER C. ECONOMUS
        UNITED STATES DISTRICT JUDGE

---

[2]    28 U.S.C. § 1915(a)(3) provides:

    An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.